STATE of Wisconsin, Plaintiff-Respondent,

v.

Lisa A. CARTER, Defendant-Appellant.†

Court of Appeals

No. 98–1688–CR. Submitted on briefs May 11, 1999.—Decided June 30, 1999.

(Also reported in 598 N.W.2d 619.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul G. LaZotte* of *Frank J. Remington Center* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *William C. Wolford,* assistant attorney general.

Before Brown, Nettesheim and Langhoff,[1] JJ.

NETTESHEIM, J.   Lisa A. Carter appeals from a judgment of conviction for first-degree recklessly endangering safety as a habitual offender and hit-and-run involving death contrary to §§ 941.30(1), 939.62 and 346.67(1), STATS. She additionally appeals from the trial court order denying postconviction relief. On appeal, Carter contends that the evidence does not support the conviction for hit-and-run in violation of § 346.67. In the alternative, Carter requests this court to vacate that conviction based on ineffective assistance of counsel or to exercise our authority of discretionary reversal pursuant to § 752.35, STATS.

We conclude that sufficient evidence supports Carter's hit-and-run conviction. We further conclude that Carter was not prejudiced by counsel's performance and that discretionary reversal is not warranted. We affirm the conviction and that portion of the postconviction order upholding it.

Carter additionally challenges the "court costs" imposed pursuant to §§ 814.60 and 302.46(1)(a), STATS.

---

[1] Circuit Judge Gary Langhoff is sitting by special assignment pursuant to the Judicial Exchange Program.

She contends that the clerk of circuit court improperly imposed a fee of $40 ($20 per charge filed) rather than the statutorily authorized single fee of $20 for all filings in the case. We disagree. We conclude that a reasonable interpretation of § 814.60 is that it envisions a $20 fee for all filings pertaining to each count. We affirm that portion of the judgment assessing $40 in court costs. Finally, Carter challenges the clerk's assessment of a $20 jail assessment pursuant to § 302.46(1)(a). The State concedes error as to this issue because the statute requires the imposition of a fine or forfeiture as a prerequisite to the jail assessment, and the trial court did not impose a fine or forfeiture against Carter.

## BACKGROUND

On October 16, 1996, the State filed a complaint against Carter alleging three counts: (1) first-degree reckless homicide while armed with a dangerous weapon pursuant to §§ 940.02(1) and 939.63, STATS.; (2) first-degree recklessly endangering safety while armed with a dangerous weapon pursuant to §§ 941.30(1) and 939.63, STATS.; and (3) party to the crime of hit-and-run involving death to a person pursuant to §§ 346.67 and 346.74(5)(d), STATS. The charges arose out of an incident occurring on August 30, 1996.

The facts relevant to the issue on appeal are as follows. Carter and her codefendant, Eugene Criaer, were driving through the city of Racine in Criaer's vehicle. Criaer exited the vehicle to execute a drug deal with Van A. Orr. According to both Carter and Criaer, Orr grabbed money from Criaer and took off running. A chase ensued with Criaer pursuing Orr on foot and Carter attempting to follow them in Criaer's vehicle. Carter was able to block Orr's path on Phillips Avenue

as he headed south, away from the intersection with Washington Avenue. Orr then turned around and ran north toward the Washington Avenue intersection, turning into the front lot of a closed Amoco gas station.

As Orr ran towards the east end of the closed gas station, Criaer came around the corner of the building with a stick. Upon seeing Criaer, Orr tried to reverse direction and fell on some loose gravel. At this same time, Carter was approaching Orr in Criaer's vehicle. Carter testified that she attempted to brake but slid into Orr, running him over. Carter exited the vehicle, approached Criaer and Orr, and yelled for those at the scene to call "911" for medical assistance. Carter and Criaer then got back in the vehicle and drove away before medical assistance arrived. Orr died as a result of his injuries.

After a three-day trial, a jury acquitted Carter of the first-degree reckless homicide charge but convicted her of first-degree recklessly endangering safety while armed with a dangerous weapon and hit-and-run. On July 14, 1997, the trial court sentenced Carter to fifteen years' imprisonment on the endangering safety conviction and a consecutive five-year sentence for the hit-and-run conviction.

Carter filed a motion for postconviction relief on February 27, 1998, requesting that (1) the hit-and-run conviction be vacated; (2) the $40 fee assessed pursuant to § 814.60(1), STATS., be reduced to $20; and (3) that the $20 jail assessment pursuant to §§ 814.60(2)(ag) and 302.46(1)(a), STATS., be vacated.

With respect to the hit-and-run conviction, Carter contended that the State had failed to prove that the fatal accident occurred on a "premises held out to the public for use of their motor vehicles" as required by § 346.66, STATS. She argued in the alternative that her

trial counsel was ineffective for failing to submit evidence that the property owner did not intend the premises for public use.

On April 24, 1998, the trial court held a hearing on Carter's motion at which Carter's trial counsel testified. On May 8, 1998, the court issued an oral decision denying Carter's motion based on its findings that the hit-and-run conviction was supported by evidence that the accident occurred on a "public thoroughfare as defined by the statute" and that trial counsel had made a strategic decision not to submit evidence to the contrary. The court did not address Carter's challenges to the assessed fees. The court filed a written order denying Carter's motion on May 25, 1998. Carter appeals.

## DISCUSSION

### The Hit-and-Run Conviction

### 1. Sufficiency of Evidence

Carter was convicted of hit-and-run contrary to § 346.67, STATS., which provides that "[t]he operator of any vehicle involved in an accident resulting in injury to or death of any person . . . shall immediately stop such vehicle at the scene of the accident . . . and in every event shall remain at the scene of the accident" until the operator has provided his or her name, address and vehicle registration number, exhibited his or her driver's license and provided for medical assistance. See § 346.67(1). Section 346.67 applies "upon all premises held out to the public for use of their motor vehicles." Section 346.66, STATS. Carter contends that the evidence did not prove that the property on which the closed gas station is located and on which the hit-

and-run occurred is a premises held out for public use such that § 346.67 applies.[2]

This court will not upset a verdict on appeal if any credible evidence supports it. *See Richards v. Mendivil*, 200 Wis. 2d 665, 671, 548 N.W.2d 85, 88 (Ct. App. 1996). The credibility of the witnesses and the weight afforded their testimony are left to the jury. *See id.* If more than one reasonable inference may be drawn from the evidence, this court must accept the jury's choice. *See State v. Poellinger*, 153 Wis. 2d 493, 506–07, 451 N.W.2d 752, 757 (1990). This court searches for credible evidence to sustain the verdict, not for evidence to sustain a verdict the jury did not reach. *See Richards*, 200 Wis. 2d at 671, 548 N.W.2d at 88.

This court has not previously considered what constitutes a "premises held out to the public for use of their motor vehicles" pursuant to § 346.66, STATS. Both parties rely on *City of Kenosha v. Phillips*, 142 Wis. 2d 549, 419 N.W.2d 236 (1988), and *City of LaCrosse v. Richling*, 178 Wis. 2d 856, 505 N.W.2d 448 (Ct. App. 1993), for guidance on this issue. In both cases, the court considered whether a premises was held out for public use in the context of § 346.61, STATS., governing reckless driving and drunken driving.

In *Phillips*, the defendant was arrested for operating a motor vehicle while intoxicated in an American Motors Corporation (AMC) parking lot. The Kenosha police found him passed out behind the steering wheel of his car with the motor running. *See Phillips*, 142 Wis. 2d at 552, 419 N.W.2d at 237. The trial court dismissed the OWI charge, finding that the AMC lot was not held out for public use because the lot was clearly owned and maintained for the benefit of AMC

---

[2] Carter does not challenge the reckless endangerment conviction.

employees. The lot was posted with a sign stating "AMC parking only. Violators will be towed at own expense." *See id.* at 553, 419 N.W.2d at 237. The City appealed arguing that a property is held out for public use "whenever there is a physical situation that would allow the passage of a motor vehicle." *See id.* We certified the issue to the supreme court.

The supreme court rejected the City's argument that to "hold out" was intended to apply to any premises upon which a motor vehicle can be driven. *See id.* at 556, 419 N.W.2d at 238. Instead, the supreme court held that the statute required "proof that it was the intent of the owner to allow the premises to be used by the public." *See id.* at 554, 419 N.W.2d at 238. The court determined that the "holding out" in *Phillips* was "the intent to permit the AMC workers to use the parking lot" and "was not a holding out to the population or community as a whole." *See id.* at 557, 419 N.W.2d at 239.

Later, this court applied the *Phillips* test in reaching the opposite conclusion under the facts of *Richling*. There, the defendant was charged with OWI while in the parking lot of a bar and restaurant. *See Richling*, 178 Wis. 2d at 857, 505 N.W.2d at 448. Although the owner testified by affidavit that the parking lot was for bar patrons only, there were no signs posted restricting the lot's use to customers and the owner had never had a vehicle towed from the lot. *See id.* at 857–58, 505 N.W.2d at 448. The municipal court dismissed the charge on the ground that the parking lot was not held out for public use. *See id.* at 858, 505 N.W.2d at 448–49. The circuit court reinstated the charge and subsequently convicted the defendant. *See id.*

We affirmed the circuit court's conviction, reasoning that customers qualify as "the public." *See id.* at 861, 505 N.W.2d at 450. Therefore, even if the lot in *Richling* was restricted to patrons only, it was still held out to the public for use of their motor vehicles. We concluded that "the appropriate test is whether, on any given day, potentially any resident of the community with a driver's license and access to a motor vehicle could use the parking lot in an authorized manner." *See id.* at 860, 505 N.W.2d at 449.

Applying the *Richling* test to the facts of this case, we conclude that there was sufficient evidence that the property was held out for public use. The premises is bordered by two city streets and abuts an alley in the rear. As such, it is easily accessed by the public. Although there were "No Parking" signs on the premises, there were not any signs prohibiting trespassing or passing through the lot. Nor had the owner taken any steps, such as fencing, to keep the public off the property. Nor was there evidence that the owner had ever towed any vehicle from the property. In addition, the owner had posted a "For Sale" sign on the property, making it reasonable to infer that the public was welcomed or invited to enter the premises and inspect the property.

■

Whether a premises is held out for public use is a question of fact to be determined by the trier of fact. *See Phillips*, 142 Wis. 2d at 558, 419 N.W.2d at 239. Here, the jury determined that it was. We conclude that there was sufficient evidence indicating that any resident of the community with a driver's license and access to a motor vehicle could use the parking lot. *See Richling,*

178 Wis. 2d at 860, 505 N.W.2d at 449. We uphold the jury's verdict.

## 2. Ineffective Assistance of Counsel

Carter contends that trial counsel was ineffective for failing to enter certain evidence into the record. Specifically, Carter argues that trial counsel should have entered photographs depicting the "No Parking" signs on the premises and an affidavit from the owner of the property indicating that it did not intend to hold the premises out to the public. The trial court denied Carter's motion for postconviction relief, finding that trial counsel made a strategic decision not to submit evidence of the owner's intent and that Carter was not prejudiced by trial counsel's decision. Although we cannot agree with the trial court that counsel's failure to submit such evidence was "strategic," we nevertheless affirm the order denying postconviction relief because Carter was not prejudiced by counsel's performance.

"There are two components to a claim of ineffective assistance of counsel: a demonstration that counsel's performance was deficient, and a demonstration that such deficient performance prejudiced the defendant. The defendant has the burden of proof on both components." *State v. Smith*, 207 Wis. 2d 258, 273, 558 N.W.2d 379, 386 (1997) (citation omitted). When a defendant fails to prove either prong of the test, the reviewing court need not consider the remaining prong. *See State v. Hubanks*, 173 Wis. 2d 1, 25, 496 N.W.2d 96, 104 (Ct. App. 1992).

██ In determining that counsel's performance was not deficient, the trial court found that counsel's failure to submit the evidence had been strategic. This finding is not supported by trial counsel's testimony. Counsel tes-

tified that he could not recall any strategic reason for not introducing testimony and photographs of the "No Parking" signs. He further testified that he had no idea who owned the property and had not made any attempt to contact the owner. Because the record does not support the trial court's finding, we conclude that it is clearly erroneous. Nevertheless, we further conclude, for reasons discussed below, that Carter was not prejudiced by counsel's performance.

In examining prejudice, the question is whether counsel's errors were so serious that the defendant was deprived of a fair trial and a reliable trial outcome. *See State v. Pitsch*, 124 Wis. 2d 628, 640–41, 369 N.W.2d 711, 718 (1985). An error is prejudicial if it undermines confidence in the outcome. *See id.* at 642, 369 N.W.2d at 719.

Carter contends that there is a reasonable possibility that she would have been acquitted of the hit-and-run charge if trial counsel had introduced evidence of the "No Parking" signs and the owner's desire that the public not use the property. We are unpersuaded. As discussed in relation to sufficiency of evidence, the jury found that the property was held out for public use. We do not view either the "No Parking" signs or the owner's intent as evidence sufficient to undermine our confidence in that finding.

First, the jury traveled to the property in question to view it firsthand. Thus, it is reasonable to infer that the jury had knowledge of the "No Parking" signs. Second, a "For Sale" sign was posted on the property. That, coupled with the lack of signs prohibiting entry onto the property, makes it reasonable to infer that the property was held out to the public. Third, the owner's unpublished subjective wish that the public not enter the property is not relevant or controlling. Rather, the

inquiry under *Richling* is whether a member of the public could access the property in an authorized manner. *See Richling*, 178 Wis. 2d at 860, 505 N.W.2d at 449. We reject Carter's contention that she was prejudiced by trial counsel's failure to introduce evidence of the "No Parking" signs and the owner's subjective intent regarding the property. The absence of this potential evidence does not in the slightest undermine our confidence in Carter's hit-and-run conviction.

### 3. New Trial in the Interest of Justice

Carter requests that we exercise our discretionary powers of reversal pursuant to § 752.35, STATS., based on a miscarriage of justice and because the real controversy has not been fully tried. Carter's request is based on the jury's failure to receive evidence of the "No Parking" signs and the owner's intent. We reject Carter's request for a new trial.

"The exercise of our discretionary power to grant a new trial is to be done infrequently and judiciously." *State v. Ray*, 166 Wis. 2d 855, 874, 481 N.W.2d 288, 296 (Ct. App. 1992). In making her request, Carter simply restates earlier arguments which we have already rejected. Because Carter has not convinced us that justice miscarried or that the real controversy was not tried, we decline to grant a new trial.

### Court Costs

Carter raises two challenges to the court costs imposed in the judgment. First, Carter contends that the clerk of courts imposed a $40 fee pursuant to § 814.60(1), STATS., when in fact the fee should have been $20. Second, Carter contends that the $20 "fine" imposed pursuant to § 302.46(1)(a), STATS., should be

vacated. While we conclude that the $40 fee was appropriate under § 814.60(1), we agree with Carter that the "fine" imposed under § 302.46(1)(a) must be vacated.

Section 814.60(1), STATS., governs clerk of court fees in criminal actions. It provides:

> In a criminal action, the clerk of circuit court shall collect a fee of $20 for all necessary filing, entering or recording, to be paid by the defendant when judgment is entered against the defendant. Of the fees received by the clerk of circuit court under this subsection, the county treasurer shall pay 50% to the state treasurer for deposit in the general fund and shall retain the balance for the use of the county.

*Id.* Carter was convicted on two counts, reckless endangerment of safety and hit-and-run. The clerk of circuit court imposed a $20 fee for each count upon which judgment was entered.

The issue is whether § 814.60(1), STATS., allows for the imposition of a $20 fee on a per count basis or whether, as Carter argues, the clerk of circuit court may impose only a single $20 fee. This presents a question of statutory interpretation that we review de novo. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978, 542 N.W.2d 148, 149 (1996). The goal of statutory interpretation is to ascertain the intent of the legislature. *See City of Racine v. Waste Facility Siting Bd.*, 216 Wis. 2d 616, 621, 575 N.W.2d 712, 714 (1998). We first look to the plain language of the statute. *See id.* If the language is clear and unambiguous, our inquiry ends and we apply the language of the statute to the facts of the case. *See Peter B. v. State*, 184 Wis. 2d 57, 71, 516 N.W.2d 746, 752 (Ct. App. 1994). However, if the language is ambiguous, we may look to the history, scope, context, subject matter and object of the statute

to discern legislative intent. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559 N.W.2d 563, 566 (1997).

We conclude that § 814.60(1), STATS., is ambiguous. The plain language of the statute does not specify whether the circuit court clerk shall assess the $20 fee on a judgment per count basis or as a single, "blanket" fee. We therefore turn elsewhere to determine the legislative intent. Because the legislative history of § 814.60(1) does not provide any insight into the legislative intent, we look to the object of the statute.

■

The purpose of § 814.60(1), STATS., is to compensate the clerk of court for the administrative costs associated with processing a criminal action. Because each charged count requires filing, entering and recording—separate and distinct from other counts charged—we conclude that the proper interpretation of § 814.60(1) permits separate $20 fees for each count. We uphold that portion of the judgment imposing a $40 fee for court costs.

Carter next challenges the $20 "fine" imposed by the clerk of court under § 302.46(1), STATS. The State agrees with Carter and concedes that the fine should be vacated. We likewise conclude that the "fine" imposed by the clerk of circuit court was not authorized under § 302.46(1).

■

Section 814.60(2)(ag), STATS., provides that "[i]n addition to any fine imposed, a defendant shall be required to pay any . . . [j]ail assessment imposed by s. 302.46(1)." Section 302.46(1), STATS., provides in relevant part:

(a) On or after October 1, 1987, *if a court imposes a fine or forfeiture for a violation of state law* . . . the court, in addition, shall impose a jail assessment in an amount of 1% of the fine or forfeiture imposed or $10, whichever is greater. If multiple offenses are involved, the court shall determine the jail assessment on the basis of each fine or forfeiture. If a fine or forfeiture is suspended in whole or in part, the court shall reduce the jail assessment in proportion to the suspension.[3] [Emphasis added.]

Because the circuit court did not assess a fine or forfeiture as part of Carter's sentence, we conclude that the imposition of a jail assessment was not authorized pursuant to § 302.46(1). We vacate that portion of Carter's judgment which imposes the $20 "fine."

## CONCLUSION

We conclude that there was sufficient evidence that the property on which the alleged hit-and-run occurred was held out for public use. We further conclude that Carter was not prejudiced by trial counsel's failure to present certain evidence at the jury trial. We also hold that Carter has failed to demonstrate that a new trial in the interest of justice is warranted. Finally, we uphold the $40 fee imposed by the clerk of circuit court for court costs covered by § 814.60(1), STATS., but we vacate that portion of the judgment which imposes a $20 "fine" for the assessment covered by § 302.46(1), STATS.

*By the Court.*—Judgment and order affirmed in part; vacated in part.

---

[3] Here again, the clerk doubled the amount of the statutory jail assessment because Carter was convicted of two counts.