# CITY OF KENOSHA, Plaintiff-Appellant,

v.

# Dale M. PHILLIPS, Defendant-Respondent.

Supreme Court

*No. 86–2243. Argued November 4, 1987.—Decided February 12, 1988.*

(On certification from the court of appeals.)

(Also reported in 419 N.W.2d 236.)

550

For the plaintiff-appellant in the court of appeals there were briefs by *Robert J. Jambois,* assistant city attorney, Kenosha, and oral argument by *Robert J. Jambois.*

For the defendant-respondent in the court of appeals there was a brief by *Richard Alan Ginkowski,* of counsel, *Frederick L. Zievers, Madrigrano, Gagliardi, Zievers & Aiello, S.C.,* Kenosha, and oral argument by *Frederick L. Zievers.*

HEFFERNAN, CHIEF JUSTICE. This is an appeal by the City of Kenosha from a judgment of the circuit court for Kenosha county. The judgment dismissed a charge against Dale M. Phillips for the intoxicated operation of his motor vehicle in a parking lot held open to the public for use of their motor vehicles, contrary to a city ordinance adopted in strict conformity with state statutes, secs. 346.61 and 346.63, Stats.[1]

This appeal comes to us by certification of the court of appeals. The issue certified to this court by the court of appeals was stated as follows:

[1]**"346.61 Applicability of sections relating to reckless and drunken driving.** In addition to being applicable upon highways, ss. 346.62 to 346.64 are applicable upon all premises held out to the public for use of their motor vehicles, whether such premises are publicly or privately owned and whether or not a fee is charged for the use thereof."

**"346.63 Operating under influence of intoxicant or other drug. (1)** No person may drive or operate a motor vehicle while:

"(a) Under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving."

551

"Is a business establishment's privately-owned parking lot 'held out to the public for use of motor vehicles' as contemplated in sec. 346.61, Stats., when posted signs warn that it is an employee parking lot and violators will be towed away?"

We answer this question, "no," and accordingly hold that, in the circumstances as posed by the court of appeals, a charge for intoxicated use of a motor vehicle would not lie because it is apparent that the premises in question were not "held out to the public for use of their motor vehicles."

The circuit judge, under the facts revealed at trial, correctly declined to apply the prohibitions against intoxicated operation of a motor vehicle. We affirm.

The relevant facts are these:

Dale Phillips (Phillips) was arrested on June 26, 1985, at about 5:00 A.M. for operating a motor vehicle while intoxicated. Kenosha police found him "passed out" or in a heavy sleep behind the steering wheel of his car, which was parked with the motor running in an American Motors Corporation (hereinafter A.M.C.) parking lot.

It is undisputed that Phillips was intoxicated and, under prior decisions, Phillips was "operating" a motor vehicle. *Milwaukee County v. Proegler,* 95 Wis. 2d 614, 291 N.W.2d 608 (Ct. App. 1980).

The disputed question then is whether he was operating the vehicle on premises covered by the drunken-driving law. Was the A.M.C. parking lot a premise "held out to the public for the use of their motor vehicles," as required by secs. 346.61 and 346.63, Stats.?

The parking lot in question, in a physical sense, was readily accessible for the use of any motor vehicle.

There were several large unobstructed entrances and exits.

There was evidence produced at the trial before the court that the parking lot was posted with a sign stating, "AMC parking only. Violators will be towed at own expense." On the basis of the unrefuted testimony of the defendant, the circuit judge made the finding in his decision that there was "no question that the parking lot was owned and maintained by American Motors for the benefit of their employees." He also found that the city did not produce any evidence to establish that the parking lot was "held out to the public for use of their motor vehicles." He concluded that being physically accessible to the public did not mean the premises were "held out" for public use. In his decision he wrote, "[Dale Phillips] was not operating his motor vehicle ... in a parking lot held out to the public for use of their motor vehicles," and dismissed the charge.

The evidentiary findings incorporated in the decision of the circuit judge are not attacked by the city. Rather, the attack is based upon the circuit judge's alleged misconstruction of the statute.

The city's statement of the issue points out its disagreement with the trial judge's view of the statute. The city asserts that the issue is whether the parking lot is held out to the public "when it has several large, unobstructed entrances and exits," despite a posting stating "AMC parking only. Violators will be towed at own expense." Thus, the city views the statute as being potentially applicable whenever there is a physical situation that would allow the passage of a motor vehicle, *i.e.,* any property "constructed and maintained in such a manner as to accommodate vehicular traffic." The city states in its

brief that only such areas as "a cornfield, a garden or an individual's backyard" would be excluded. Under the city's view, only areas not physically intended or structured for the use of motor vehicles are excluded. Under this view, a parking lot by its very purpose and manner of construction would be within the sweep of the statute.

The circuit judge, however, interpreted "held out" to require a manifestation of the owner's intent to allow the public to use their vehicles on the premises. He found that the city had failed to establish that intent, and all that was revealed by the evidence was the intent of A.M.C. to benefit its own employees by maintaining the parking lot.

We agree with the circuit judge's interpretation of the statute—there must be proof that it was the intent of the owner to allow the premises to be used by the public. In the absence of any proof to show that intent, the charge against Phillips was properly dismissed.

We reach this conclusion by analysis of the meaning of the words of the statute and by a consideration of its legislative history.

The general provision stated at the beginning of ch. 346, Stats., is that the "Rules of the Road" which appear in the chapter apply "exclusively upon highways except as otherwise expressly provided in [that] chapter." Sec. 346.02(1).

Thus, in the absence of an express provision, drunken operation of a motor vehicle off the highway does not constitute a violation of sec. 346.63, Stats. This fact impelled the action of the legislative committee which proposed sec. 346.61. It recognized the Attorney General's ruling that the existing drunken-driving law permitted enforcement only on highways. 38 Ops. Atty. Gen. 184 (1949). "'Highway' means all

public ways and thoroughfares and bridges on the same." Sec. 340.01(22).

To rectify this perceived deficiency in the statutes, the legislature adopted sec. 346.61, Stats., in 1957 to provide that the provisions of secs. 346.62 to 346.64 "are applicable upon all premises held out to the public for use of their motor vehicles ...."

The committee note to sec. 346.61, Stats., after referring to the enforcement limitations enumerated in the Attorney General's opinion, stated that the newly adopted statute gave a "broader applicability," which was in the interest of public safety and was also consistent with the Uniform Vehicle Code (hereinafter U.V.C.), sec. 11–101 (1954).

By the adoption of sec. 346.61, Stats., the drunken driving and reckless driving laws were indeed given "broader applicability."

A question posed in this case is how much broader? While the U.V.C., which was before the legislature in 1957, also proposed broader applicability, its proposal was not congruent with the provisions adopted. On the contrary, it is apparent that the broad sweep of the U.V.C. was rejected. The proposed U.V.C. specifically made drunken-driving provisions applicable "upon highways and *elsewhere throughout the state*" (emphasis supplied). U.V.C., sec. 11–101(2) (1954). Our statutes, however, have rejected the "elsewhere" language for a more limited applicability. The sweep of sec. 346.61, Stats., is not as broad as the U.V.C. proposal. The narrower language used in sec. 346.61 purports to make the "Rules of the Road" in respect to drunken driving additionally applicable only "upon all premises held out to the public for use of their motor vehicles."

The statute on its face refutes the broad sweep urged by the city. By claiming the exclusion of only areas such as cornfields, gardens, and backyards, the city would apply the statute in an extremely broad manner, almost tantamount to the "elsewhere" formulation of the U.V.C. that was rejected by the legislature. The city has declined to give any considered meaning to the words, "held out," other than to assert that the statute applies on the highway or "elsewhere" at places that are functionally available for vehicles—even on home driveways or in the garages of private persons. It does not appear reasonable, particularly in light of the city's rationalization and the examples given, to conclude that to "hold out" was intended to apply to any premises upon which a motor vehicle can be driven.

The term, "premises," however, does not pose any interpretative difficulty. It appears to mean any parcel of land or real estate, including any appurtenances thereon. In *Black's Law Dictionary*, 3d ed. (1933), p. 1403, "premises" is defined as "land and buildings thereon ... the term 'premises' is used in common parlance to signify land, with its appurtenances." The word is not defined elsewhere in the statutes in a manner relevant to its usage in the chapter concerning rules of the road. The meaning of "premises" is not at issue in the present case. The ordinary meaning would therefore apply. The A.M.C. lot concededly was a "premise." Disputed is the meaning of the phrase, "held out to the public."

"Held out to the public" is not defined in the statutes. We conclude, however, that the words must be interpreted in their ordinary sense as ascertained from any standard dictionary. The following definitions are typical:

"Hold out, a. to present; offer." *Random House Dictionary of the English Language,* unabridged, 2d ed. (1987), p. 910.

"c.  To offer, proffer, present,

"d.  To represent." 5 *New English Dictionary* (1901), p. 334.

"... offer, proffer ... represent ..." *Webster's Third New International Dictionary,* unabridged, p. 1079.

"Hold out means to lead the world to believe by language and conduct." *Words and Phrases,* citing *U.S. v. Snow,* 4 Utah 313, 325, 9 P. 686 (1886).

All of these definitions indicate that it is the intent of the owner of premises that is important—Is it the intent of the person or corporation in control of the premises that they be available to the public for the use of their motor vehicles? If they are so "held out" to the public, the premises come within the ambit of the rules of the road in respect to drunk driving.

██ The word, "public," also needs definition. In oral argument before the trial court, the city asserted that, although the restriction might be to A.M.C. employees, these employees were members of the public and, hence, there was a holding out to the public. We conclude that a holding out to a defined, limited portion of the citizenry is not a holding out to the public. "Public" is defined as "of, pertaining to, or affecting a population or a community as a whole." *Random House Dictionary of the English Language,* unabridged, 2d ed. (1987), p. 1562. Thus, the holding out here—the intent to permit the A.M.C. workers to use the parking lot—was not a holding out to the population or community as a whole, but only to the

A.M.C. workers. The evidence that the city was required to produce in order to prevail was that which demonstrated A.M.C.'s intent to permit the public as a whole to use the premises for parking purposes.

The construction of a statute is a matter of law which this court may decide *ab initio.* We conclude, based upon the above analysis, the words of the statute and its history recited in the committee comments that it was the legislative intent to make rules of the road in respect to drunken driving applicable off the highway only where there was evidence that it was the intent of the person managing the premises to allow the public as a whole to make use of the premises for their motor vehicles.

Once the legislative purpose is ascertained and the legal meaning of the statute is stated, a fact question is presented in each case that must be determined by the trier of the facts—were the premises, as a factual matter, held out to the public for use of their motor vehicles. This is a burden of proof which the legislature has placed upon the state in a criminal prosecution or upon a municipality in a civil forfeiture action brought under sec. 346.61, Stats., or under a conforming ordinance.

This burden can be satisfied in the same way that any burden of proof can be—by direct, demonstrative, testimonial, or circumstantial proof, and even upon the basis of judicial notice, if properly taken. Holding out can be by action or inaction that would make the intent explicit or implicit. Either action or inaction might, in appropriate circumstances, constitute a holding out to the public, but the burden of proof is on

the proponent of the applicability of the statute.[2] As Judge Fisher stated in his circuit court decision dismissing the charges, "the court is not satisfied that the city has established that the parking lot was in fact held out to the public for use of their motor vehicles."

To the extent there was any evidence relevant to the question, it was the testimony, uncontroverted, that there was a sign on the premises stating, "AMC parking only. Violators will be towed at own expense." There was no evidence produced by the city to controvert the only inference that could be drawn from this evidence—that the premises were not held out to the public for use of their motor vehicles.

While it appears clear that, under the circumstances here, the city has no case, nevertheless the policy arguments made by the city that might impel a conviction are worthy of consideration. The city points out that it is only because the defendant was drunkenly operating his vehicle at a place which was not held out for his use as a member of the public that he escapes punishment for drunken driving. This the city asserts is contrary to the general policy of the state as summarized in *State v. Caibaiosai,* 122 Wis. 2d 587, 593, 363 N.W.2d 574 (1985), "combining the operation of a motor vehicle with being in an intoxicated state is conduct which ... is pervasively antisocial." We do not retreat from that statement.

It can be argued that a reasonable legislator in 1957 would have intended to make those antisocial acts either on or off the highway subject to state or

---

[2]In some circumstances the facts may be undisputed and, hence, only a question of law, *i.e.,* the legal consequences of those facts will be presented.

municipal prosecutions. Nevertheless, it is clear from the statute and the comments to it that the legislature elected to enact legislation that on its face was less pervasive in its geographical sweep than the U.V.C. proposal it had before it. Instead of making the Rules of the Road applicable on highways and *elsewhere* (as suggested by the U.V.C.), it rather chose a more limited expansion of the statutory sweep. To use the words of the commentary to sec. 346.61, Stats., "This section gives the sections relating to reckless and drunken driving somewhat broader applicability" than theretofore when no off-highway violations were covered, but it clearly chose not to adopt the language of the U.V.C. which arguably would cover the present situation.

We can only conclude that the present limited sweep of sec. 346.61, Stats., was the result of a carefully considered legislative decision. The operation of the statute as we construe it is not absurd, for it at least ameliorates the problem then presented to the legislature.

Although a good argument can be made that different statutes would more satisfactorily address the problems of drunken driving, it is not the function of the courts to undo the legislature's work.

Even were we to find the statute may in some instances lead to results that, in view of the general policies of the state on drunken driving, are unjust or contrary to those policies, that does not give this court the leeway to rectify what may be a legislative oversight. These arguably untoward results do not "justify a court in amending the statute or giving it a meaning to which its language is not susceptible

merely to avoid what the court believes are inequitable or unwise results." *State ex rel. Associated Indemnity Corp. v. Mortensen,* 224 Wis. 398, 402, 272 N.W. 457 (1937).

*By the Court.*—Judgment affirmed.