CITY OF LA CROSSE, Plaintiff-Respondent,

v.

Paul M. RICHLING, Defendant-Appellant.

Court of Appeals

*No. 93–0944. Submitted on briefs May 11, 1993.—Decided August 19, 1993.*

(Also reported in 505 N.W.2d 448.)

For the defendant-appellant the cause was submitted on the briefs of *Howard J. Eglash* of La Crosse.

For the plaintiff-respondent the cause was submitted on the briefs of *Thomas L. Jones, III*, assistant city attorney.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J.   Paul Richling appeals from a judgment convicting him of operating a motor vehicle while intoxicated (OMVWI), contrary to sec. 346.63, Stats. Richling claims the judgment must be reversed because the parking lot where the OMVWI violation occurred does not qualify as premises held out to the public for use of motor vehicles as required by sec. 346.61, Stats.[1] We reject this contention and affirm the conviction.

## I.   BACKGROUND

The parties stipulated to the facts. On the afternoon of December 10, 1991, Richling was operating his automobile in the parking lot of Schmidty's Bar & Restaurant when he collided with another car. A police officer came to the scene and arrested Richling for OMVWI.

The parking lot, as well as Schmidty's Bar & Restaurant, is owned by Norbert Schmidt. In an affidavit, Schmidt averred that the parking lot was only for the use of Schmidty's patrons. However, no signs are posted restricting the lot's use to customers, and

---

[1] Section 346.61, Stats., provides:

In addition to being applicable upon highways, ss. 346.62 to 346.64 are applicable upon all premises held out to the public for use of their motor vehicles, whether such premises are publicly or privately owned and whether or not a fee is charged for the use thereof.

Schmidt has never had an automobile towed from his parking lot.

Richling successfully filed a motion in municipal court to dismiss the charge for OMVWI on the ground that Schmidty's parking lot was not held out for public use.[2] The state appealed to the circuit court where Richling renewed the motion to dismiss. The circuit court denied the motion and subsequently convicted Richling of OMVWI. This appeal followed.

## II. STANDARD OF REVIEW

The issue on appeal requires the application of a statute to a set of undisputed facts. This is a question of law which we review *de novo. State ex rel. Stedman v. Rohner,* 149 Wis. 2d 146, 150, 438 N.W.2d 585, 587 (1989).

## III. PUBLIC USE

Richling argues that Schmidty's parking lot was not held out for public use within the meaning of sec. 346.61, Stats. He primarily relies upon *City of Kenosha v. Phillips,* 142 Wis. 2d 549, 419 N.W.2d 236 (1988), and Schmidt's averment that the parking lot was intended for his customers' use only.[3]

In *Phillips,* the defendant was arrested for OMVWI in a parking lot owned by the American Motors Corporation (AMC) and designated for use by

---

[2] This information was found in a copy of the municipal court's decision included in the appendix to Richling's brief.

[3] Richling also cites two Texas cases as authority. However, these cases are not persuasive because the language of the Texas statute which they interpret differs significantly from sec. 346.61, Stats.

its employees.[4] In determining whether the lot was "held out to the public," the supreme court stated that the test was whether the person in control of the lot intended it to be available to the public for use of their motor vehicles. *Id.* at 557, 419 N.W.2d at 239. The court then resorted to RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1562 (2d ed. 1987), to define "public" as " 'of, pertaining to, or affecting a population or a community as a whole.' " *Phillips*, 142 Wis. 2d at 557, 419 N.W.2d at 239. Finally, the court concluded that because AMC's employees constituted a "defined, limited portion of the citizenry," rather than the population or community as a whole, the lot was not held out to the public. *Id.*

Assuming that Schmidt did in fact restrict the use of his parking lot to his customers,[5] we conclude that the lot was held out to the *public* for use of their motor

---

[4] The sign in *Phillips* stated: " 'AMC parking only. Violators will be towed at own expense.' " 142 Wis. 2d at 553, 419 N.W.2d at 237. Richling contends that the sign itself did not limit the lot to AMC employees and that "[c]ustomers, visitors, delivery persons and many others could conceivably have parked in the AMC lot lawfully." Therefore, he concludes that we should not construe the facts of *Phillips* too narrowly. The argument is without merit as the trial court in *Phillips* specifically found that the lot was maintained for the benefit of AMC's employees, and the supreme court accepted this finding in reaching its decision.

[5] Although Richling claims that the evidence as to Schmidt's intent to restrict the lot to customers is undisputed, several stipulated facts give rise to an inference that Schmidt did not intend to limit the lot's use in any respect. For example, there was no sign posted stating that the lot was for Schmidty's customers only, and Schmidt had never had any unauthorized vehicle towed away. In addition, Schmidt also indicated that he would permit travelers to use the lot to stop and ask for direc-

vehicles rather than to a defined, limited portion of the citizenry. In our view, it is not necessary that a business establishment's customers form a representative cross section of a city or town's population for them to be considered the "public" within sec. 346.61, Stats. Nor is it necessary that some minimum percentage of the city's population patronize the business.

We believe the appropriate test is whether, on any given day, potentially any resident of the community with a driver's license and access to a motor vehicle could use the parking lot in an authorized manner. Thus, in the case before us, practically any motorist in La Crosse could be a customer and park in Schmidty's lot on any day Schmidty's is open. The lot where Richling was arrested therefore falls under the category of "premises held out to the public."[6] This is in contrast with the lot in *Phillips* where, on a daily basis, only those motorists who were employed by AMC, a

tions, and that he "would probably not object" to a motorist using the lot to turn around.

We do not address the issue of whether the lot was limited to customers because we are precluded from making factual determinations. *Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 n.3 (1980). Nor is it necessary to do so because we conclude that Schmidty's customers fall within the *Phillips* definition of public.

[6] It is not clear from this record whether persons under twenty-one years of age may patronize Schmidty's unaccompanied by a person over twenty-one years old, or if they may enter the establishment at all. Whatever Schmidty's policy is in this regard has no effect on this appeal. We conclude that the segment which would be excluded from parking in the lot, i.e., persons between sixteen and twenty-one years of age, is relatively small compared to the population as a whole, and, therefore, should not affect the outcome of this appeal.

"defined, limited portion of the citizenry," would be authorized to park there.

Finally, we note that if we were to hold that a business establishment's customers do not constitute the public as that term is used in sec. 346.61, Stats., we would essentially render the "owner's intent" test in *Phillips* meaningless. If customers do not qualify as the public, it would be difficult to conceive of any parking lot in this state as being held out to the public under the statute.

*By the Court.*—Judgment affirmed.