COURT OF APPEALS
DECISION
DATED AND FILED

May 3, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1190-CR**

Cir. Ct. No. **2018CF326**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

　　PLAINTIFF-RESPONDENT,

　V.

JEFFREY J. SULLIVAN,

　　DEFENDANT-APPELLANT.

　　　　　APPEAL from a judgment and an order of the circuit court for Shawano County: JAMES R. HABECK and KATHERINE SLOMA, Judges. *Affirmed.*

　　　　　Before Stark, P.J., Hruz and Gill, JJ.

　　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jeffrey Sullivan appeals a judgment, entered following a jury trial, that convicted him of operating a motor vehicle while intoxicated (OWI), as a fifth offense. Sullivan also appeals an order denying his postconviction motion, in which he asserted that the evidence at trial was insufficient to support the jury's verdict. On appeal, Sullivan renews his claim that the State failed to present sufficient evidence at trial to convict him of OWI. Specifically, he claims the evidence was insufficient to prove that he operated a motor vehicle on "premises held out to the public for use of their motor vehicles." *See* WIS. STAT. § 346.61 (2019-20).[1] We reject Sullivan's argument and affirm.

## BACKGROUND

¶2 The State charged Sullivan with disorderly conduct, as a repeater, and fifth-offense OWI. The State later filed an amended Information adding a charge of operating a motor vehicle with a prohibited alcohol concentration (PAC), as a fifth offense. Sullivan moved to dismiss the OWI and PAC charges, arguing that the circuit court lacked jurisdiction with respect to those counts because the State had failed to allege that he operated a motor vehicle on "premises held out to the public for use of their motor vehicles." *See* WIS. STAT. § 346.61. Following an evidentiary hearing, the court denied Sullivan's motion to dismiss. Sullivan then filed a motion for reconsideration, which the court also denied.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3     The case proceeded to a one-day jury trial. At trial, the State presented evidence that Sullivan lived four doors down from "Steve"[2] in a trailer park located in Shawano County. One evening, Sullivan approached Steve while Steve was mowing his lawn with his three-year-old son present. Sullivan began yelling at Steve and calling him names. He also grabbed at Steve, kicked Steve's lawnmower, and called Steve's son "little fucker."

¶4     Based on Sullivan's behavior and appearance, Steve believed that Sullivan was intoxicated. After Sullivan left the area where Steve was mowing, Steve called the trailer park's manager, who instructed him to call law enforcement. While on the phone, Steve saw Sullivan driving his truck through the trailer park. Sullivan was taken into custody shortly thereafter, and law enforcement obtained a warrant to draw his blood. The blood draw revealed that Sullivan's blood alcohol concentration was 0.214.

¶5     At trial, Sullivan did not dispute that he had driven a motor vehicle while intoxicated and while his blood alcohol concentration exceeded the statutory limit. Instead, he argued that the jury could not convict him of OWI or PAC because the location where he operated his motor vehicle did not constitute premises "held out to the public for use of their motor vehicles." The jury ultimately found Sullivan guilty of the OWI and PAC charges, but not guilty of the disorderly conduct charge. Pursuant to WIS. STAT. § 346.63(1)(c), the circuit court entered judgment only on the OWI charge.[3]

_____

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86, we refer to the alleged victim using a pseudonym.

[3] The Honorable James R. Habeck presided over Sullivan's jury trial and sentenced him on the OWI charge.

¶6     Sullivan moved for postconviction relief, asking the circuit court to vacate his conviction and sentence on the OWI charge. Sullivan again argued that he could not be convicted of OWI because the evidence showed that the area where he drove his vehicle was "a private road or driveway," rather than premises held out to the public for use of their motor vehicles. The court denied Sullivan's motion, and this appeal follows.[4]  Additional facts relevant to the issues are discussed below.

## DISCUSSION

¶7     WISCONSIN STAT. § 346.61 provides that, in addition to being applicable upon highways, Wisconsin's OWI statute also applies "upon all premises held out to the public for use of their motor vehicles." In this appeal, the only issue is whether the evidence presented at Sullivan's trial was sufficient for the jury to find that the roads where Sullivan operated his truck were "held out to the public for use of their motor vehicles" under § 346.61.

¶8     Whether the evidence was sufficient to sustain the jury's guilty verdict on the OWI charge is a question of law that we review independently. *See State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. When conducting this review, we may not substitute our judgment for that of the jury unless the evidence, viewed most favorably to the State and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). It is the function of the jury, not this court, to

---

[4] The Honorable Katherine Sloma entered the order denying Sullivan's postconviction motion.

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 506. "Thus, when faced with a record of historical facts which supports more than one inference, an appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law." *Id.* at 506-07. Ultimately, if any possibility exists that the jury could have drawn the appropriate inferences from the evidence adduced at trial to find the defendant guilty, then we may not overturn the jury's verdict, even if we believe the jury should not have found guilt based on the evidence before it. *Id.* at 507.

¶9 Wisconsin appellate courts have previously considered whether various areas qualify as "premises held out to the public for use of their motor vehicles" under WIS. STAT. § 346.61. In *City of Kenosha v. Phillips*, 142 Wis. 2d 549, 552, 419 N.W.2d 236 (1988), our supreme court considered whether an American Motors Corporation (AMC) parking lot fell within that statutory phrase. The parking lot was posted with a sign stating: "AMC parking only. Violators will be towed at own expense." *Id.* at 553. Evidence also showed that the parking lot was "owned and maintained" by AMC for the benefit of its employees. *Id.*

¶10 Under these circumstances, the supreme court concluded that AMC's parking lot was not held out to the public for use of their motor vehicles under WIS. STAT. § 346.61. *Phillips*, 142 Wis. 2d at 554. The court explained that the statute requires "proof that it was the intent of the owner to allow the premises to be used by the public." *Id.* The court concluded the evidence showed that AMC intended to allow only its employees to use the parking lot and did not intend to permit the public as a whole to use the lot. *Id.* at 557-58.

5

¶11 *Phillips* teaches that, when considering whether an area was held out to the public for use of their motor vehicles under WIS. STAT. § 346.61, we must look for evidence of whether the property owner intended to allow the premises to be used by the public. *Phillips*, 142 Wis. 2d at 554, 557. This court subsequently applied *Phillips*' reasoning in *City of La Crosse v. Richling*, 178 Wis. 2d 856, 505 N.W.2d 448 (Ct. App. 1993). In *Richling*, the defendant was arrested for OWI after his car collided with another vehicle in a bar parking lot. *Id.* at 857. The bar's owner averred that the parking lot was only for the use of the bar's patrons. *Id.* However, no signs were posted restricting the lot's use to customers, and no vehicle had ever been towed from the parking lot. *Id.* at 857-58. In addition, the bar's owner "indicated that he would permit travelers to use the lot to stop and ask for directions, and that he 'would probably not object' to a motorist using the lot to turn around." *Id.* at 859 n.5.

¶12 We concluded that, even assuming the bar's owner "did in fact restrict the use of his parking lot to his customers," the lot was nevertheless "held out to the *public* for use of their motor vehicles rather than to a defined, limited portion of the citizenry." *Id.* at 859-60. We explained: "In our view, it is not necessary that a business establishment's customers form a representative cross section of a city or town's population for them to be considered the 'public' within [WIS. STAT. § 346.61]. Nor is it necessary that some minimum percentage of the city's population patronize the business." *Richling*, 127 Wis. 2d at 860. Instead, we stated that the "appropriate test" was "whether, on any given day, potentially any resident of the community with a driver's license and access to a motor vehicle could use the parking lot in an authorized manner." *Id.* Applying that test to the facts at hand, we stated that "practically any motorist in La Crosse could be a customer and park in [the bar's] lot on any day [the bar] is open." *Id.*

6

Consequently, the parking lot constituted premises held out to the public under § 346.61. *Richling*, 127 Wis. 2d at 860.

¶13     More recently, this court has applied the analysis set forth in *Phillips* and *Richling* to conclude that a variety of locations constituted premises held out to the public for use of their motor vehicles. *See, e.g.*, *Kenosha Cnty. v. Adams*, No. 2015AP2184, unpublished slip op. (WI App July 27, 2016) (roads located on private property in a Boy Scout camp); *State v. Fleischmann*, No. 2011AP2558-CR, unpublished slip op. (WI App Mar. 20, 2012) (parking lot for a vacant business on airport property); *State v. Anderson*, No. 2011AP1499-CR, unpublished slip op. (WI App Mar. 14, 2012) (frozen surface of Lake Winnebago).[5]

¶14     As particularly relevant to this appeal, we have also twice held that roads within gated communities qualified as premises held out to the public for use of their motor vehicles. *See State v. Tecza*, 2008 WI App 79, 312 Wis. 2d 395, 751 N.W.2d 896; *State v. Hyzy*, No. 2011AP2503-CR, unpublished slip op. (WI App May 2, 2012). In *Tecza* and *Hyzy*, we emphasized that the relevant gated communities allowed access to nonresidents, such as delivery drivers and repair persons, and also permitted police to patrol their roads. *Tecza*, 312 Wis. 2d 395, ¶¶19, 21; *Hyzy*, No. 2011AP2503-CR, ¶¶20, 22. Moreover, we noted in *Tecza* that "members of the general public were given access to the [gated community's] roadways to show and view houses for sale, watch fireworks, play golf, attend weddings, and to just look around." *Tecza*, 312 Wis. 2d 395, ¶19. Similarly, in

---

[5] An unpublished opinion issued on or after July 1, 2009, that is authored by a single judge or a member of a three-judge panel may be cited for its persuasive value. WIS. STAT. RULE 809.23(3)(b).

*Hyzy*, the public could access the gated community's roads to "to play golf, attend weddings, use its fitness center, and participate in high school activities like a postprom party." *Hyzy*, No. 2011AP2503-CR, ¶21. In both cases, we concluded the evidence showed that the respective gated communities' roads were held out to the public for use of their motor vehicles because, on any given day, any driver could enter the gated communities. *Tecza*, 312 Wis. 2d 395, ¶¶19, 22; *Hyzy*, No. 2011AP2503-CR, ¶26.

¶15 Applying the legal principles discussed above to the instant case, the evidence presented at trial was sufficient for the jury to find that the roads where Sullivan operated his motor vehicle constituted premises held out to the public for use of their motor vehicles under WIS. STAT. § 346.61. At trial, Elroy Voigt, the owner of the trailer park, admitted that he did not restrict public access to the trailer park and that it was not his "purpose" to do so. Voigt testified that he had never posted no-trespassing signs in the trailer park. Although Voigt did not consider the park's roads to be "thoroughfares," he knew that people visited the area, and he wanted them to enjoy access to the trailer park just like anyone who might stop by his home to say hello. He did not intend to restrict police or emergency medical services from accessing the trailer park, and he agreed that he would expect police to intervene if a person was driving in the park while intoxicated. Voigt also confirmed that he did not restrict access to the park by postal service workers, package couriers, or delivery drivers. In addition, he did not restrict access to the park for events like family reunions involving residents.

¶16 Evidence was introduced at trial that there were signs in the trailer park stating that the park was private property and unauthorized vehicles would be towed. Voigt clarified, however, that the purpose of those signs was merely to

deter people from storing or parking unregistered vehicles in the trailer park. The signs were not intended to prohibit anyone from entering the park.

¶17 The jury also heard testimony from Mark Patek, the trailer park's manager. Patek confirmed that members of the public were allowed to enter the trailer park, including delivery drivers, post office employees, emergency medical services, firefighters, police, garbage collectors, and tenants' visitors. Patek also confirmed that the signs stating that unauthorized vehicles would be towed were not intended to restrict public access to the park.

¶18 Officer Jacob Korth of the Shawano Police Department also testified at trial. Officer Korth explained that he had previously responded to calls for service in the trailer park. He also testified that he had patrolled the trailer park outside of any calls for service, and he had no reason to believe that he was not allowed to do so.

¶19 The jury also heard testimony from Bernard Korth, a co-owner of Four Seasons Disposal. Korth explained that Four Seasons Disposal had a contract with the Town of Washington to provide curbside garbage pickup for the residences in the trailer park. Korth also testified that when collecting garbage from those residences, he would "go down each individual road" in the trailer park and "pick up at each lot." Town Clerk Kara Skarlupka confirmed that the Town of Washington had a contract with Four Seasons Disposal to collect garbage from the trailer park.

¶20 Based on the evidence summarized above, the jury could reasonably find that Voigt—the owner of the trailer park—intended to allow the trailer park's roads to be used by the public, given that he permitted delivery drivers, garbage collectors, police, firefighters, emergency medical services, and tenants' visitors to

use those roads. *See **Phillips***, 142 Wis. 2d at 554, 557 (focusing on the property owner's intent to allow public access). The jury could also reasonably find that, "on any given day, potentially any resident of the community with a driver's license and access to a motor vehicle could use the [trailer park's roads] in an authorized manner"—for instance, by visiting or providing services to the trailer park's residents. *See **Richling***, 178 Wis. 2d at 860. The evidence was therefore sufficient to support the jury's determination that the roads where Sullivan operated his motor vehicle constituted premises held out to the public for use of their motor vehicles under WIS. STAT. § 346.61.

¶21 Sullivan highlights testimony that may have supported a contrary finding. In particular, Sullivan notes that when Voigt was asked whether it was his intent "to open this private road for people in the community who are not related to the residents of the community to be just driving through doing who knows what," Voigt responded, "No. It's not a tourist area." Sullivan asserts that the State "presented no evidence" to contradict this "clear expression" of Voigt's intent.

¶22 We reject this argument because it ignores our standard of review. As noted above, when the evidence "supports more than one inference, an appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law." *See **Poellinger***, 153 Wis. 2d at 506-07. Here, considering Voigt's entire testimony and the other evidence summarized above, the jury could reasonably find that Voigt intended to allow members of the public to use the trailer park's roads. When reaching its verdict, the jury was not required to rely solely on the single portion of Voigt's testimony that Sullivan cites. Moreover, we agree with the State that "[t]he fact that [Voigt] did not want people with no connection to his

10

park to be needlessly wandering on his private property" does not preclude a finding that the park was held out to the public for use of their motor vehicles. As the State aptly notes, "a parking lot would not cease to be a premises held out to the public just because its owners disapprove of non-customers loitering or improperly using their parking lot[] as a shortcut to a different location."

¶23 In support of his claim that the evidence was insufficient, Sullivan also relies heavily on our supreme court's statement in *Phillips* that the legislature intended "to make rules of the road in respect to drunken driving applicable off the highway only where there was evidence that it was the intent of the person managing the premises to allow *the public as a whole* to make use of the premises for their motor vehicles." *Phillips*, 142 Wis. 2d at 558 (emphasis added). Based on that statement, Sullivan contends the State was required to prove that the trailer park's owner and/or manager "had the intent to allow the public as a whole to use the trailer park for some purpose that the public as a whole would be able to do in the trailer park." Sullivan then asserts that there is no possible purpose that the general public, as a whole, would have for entering the trailer park.

¶24 We do not find this argument persuasive. Despite *Phillips'* reference to the public "as a whole," neither *Phillips* nor its progeny stands for the proposition that a location is held out to the public for use of their motor vehicles only if all—or even most—members of the general public would have a reason to visit that location. As the State aptly notes, many members of the public would have no reason to drive on the frozen surface of Lake Winnebago, on a private road in a campground for Boy Scouts, or on a road located within a particular gated community. Nevertheless, Wisconsin courts have determined that each of those locations constitute premises held out to the public for use of their motor vehicles. *See Tecza*, 312 Wis. 2d 395; *Adams*, No. 2015AP2184; *Anderson*,

11

No. 2011AP1499-CR. We agree with the State that the test is not whether a particular area "appeal[s] to *every* member of society," but whether "a licensed driver could drive down the roads of [the area] in an authorized manner on any given day." *See **Richling***, 178 Wis. 2d at 860. In this case, the evidence at trial was sufficient for the jury to make that finding. We therefore reject Sullivan's argument that the evidence was insufficient to support the jury's verdict.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.