COURT OF APPEALS
DECISION
DATED AND FILED

February 13, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1622-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF130

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

DAVID A. SCHULTZ,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Eau Claire County: EMILY M. LONG, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1   STARK, P.J.   David A. Schultz appeals from a judgment, entered following a jury trial, convicting him of operating a motor vehicle while under the influence of an intoxicant (OWI), as a fifth offense. Schultz also appeals from an order denying his postconviction motion. He makes two separate, but related,

arguments on appeal. First, Schultz contends that the evidence presented at trial was insufficient to establish that he operated his motor vehicle on "premises held out to the public for use of their motor vehicles" because the State failed to prove who owned the parking lot where he operated his vehicle prior to his arrest and/or secure the owner's testimony to prove his or her intent to hold out the lot to the general public for parking. *See* WIS. STAT. § 346.61 (2021-22);[1] *City of Kenosha v. Phillips*, 142 Wis. 2d 549, 557, 419 N.W.2d 236 (1988). Second, Schultz claims that the jury instructions did not correctly advise the jury of the State's burden to prove ownership of the parking lot and the owner's intent. We reject Schultz's arguments and affirm.

## BACKGROUND

¶2      On the evening of January 17, 2020, Schultz was leaving the Bull Pen Bar in Eau Claire, Wisconsin, when he backed his vehicle into a truck parked behind him. The owner of the truck[2] also happened to be leaving the bar at the same time and witnessed Schultz hit his truck. The accident occurred in the parking lot located behind the Bull Pen Bar. According to the witness, Schultz tried to "take off"—meaning that he attempted to quickly leave the scene—but "[i]t was winter, icy, [and] his tires [were] spinning." The witness got Schultz to stop by "bang[ing]" on Schultz's car door, at which time Schultz "kept telling [the witness] not to call the police." The witness eventually called the police when Schultz was unable or unwilling to produce his car insurance information.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we refer to the truck's owner as "the witness" in this case.

¶3 After the police arrived and conducted an investigation—including administering field sobriety tests and a preliminary breath test to Schultz that revealed a blood alcohol concentration (BAC) of .211—Schultz was arrested.[3] The State charged Schultz by Information with OWI, contrary to WIS. STAT. § 346.63(1)(a), and operating with a prohibited alcohol concentration (PAC), contrary to § 346.63(1)(b), both as a fifth offense.

¶4 The case eventually proceeded to a two-day jury trial. At trial, the State called four witnesses: Officer Matthew Sanda and Officer David Mikunda, both of the Eau Claire Police Department; the witness; and Michelle Gee, the controlled substance analyst who tested Schultz's blood sample. The State also attempted to secure the testimony of the owner of the Bull Pen Bar as a rebuttal witness, but it was unable to do so. Schultz called no witnesses, and he elected not to testify.

¶5 As pertinent to this appeal, WIS. STAT. § 346.61 provides that "[i]n addition to being applicable upon highways, [WIS. STAT. § 346.63 is] applicable upon all premises held out to the public for use of their motor vehicles … whether such premises are publicly or privately owned and whether or not a fee is charged for the use thereof." Sec. 346.61. Thus, Schultz's defense theory at trial, at least in part, was that the parking lot where he operated his vehicle and struck the witness's truck was not "held out to the public for use." At the jury instruction

---

[3] A later test of Schultz's blood revealed a BAC of .224. We do not address additional details pertaining to evidence establishing probable cause to arrest because Schultz does not challenge on appeal the jury's conclusion that he was under the influence of an intoxicant at the time he operated his vehicle.

conference, the parties agreed that the jury would be instructed on OWI offenses occurring on "premises held out to the public."

¶6      The jury found Schultz guilty of both charged counts.[4]  The circuit court sentenced Schultz to two years' initial confinement followed by four years' extended supervision.

¶7      Schultz filed a motion for postconviction relief.  In his motion, Schultz argued that the evidence presented at trial was "insufficient to prove who was the owner of the parking lot … and that such owner intended to hold out the lot to the general public for parking."  Relatedly, Schultz claimed that the jury instructions were insufficient because they did not address that the State was required to prove both that the owner of the parking lot was the Bull Pen Bar, as alleged in the complaint, and that the owner held the lot out for use by the general public.

¶8      The circuit court issued its oral ruling denying Schultz's motion for postconviction relief at the conclusion of a nonevidentiary hearing.  According to the court, there was sufficient testimony presented regarding the "goings-on of that parking lot.  And I think the defense did a very nice job of really hammering at that point and questioning whether [the parking lot] was held out to the public." That evidence, explained the court, was sufficient to sustain the jury's verdict. Given its conclusion on the first issue, the court also found that the jury instructions were proper.  Schultz appeals.

---

[4] While the jury also found Schultz guilty of PAC, Schultz was convicted only of the OWI offense.  *See* WIS. STAT. § 346.63(1)(c).

**DISCUSSION**

¶9      At issue in this appeal is the type of evidence required to establish whether the parking lot where Schultz operated his vehicle was "held out to the public for use of their motor vehicles" pursuant to WIS. STAT. § 346.61. The answer to that question will resolve both questions on appeal.

¶10      According to Schultz, our supreme court's holding in *Phillips* stands for the proposition that "how the parking lot is used is not the determinative issue to be decided at trial; rather, the determinative issue is a question of owner's intent: was it the owner's intent that the lot be held open for public use, or for more restricted private use?" Thus, asserts Schultz, "it is the intent of the owner of premises that is important." *See Phillips*, 142 Wis. 2d at 557. Schultz argues that absent evidence identifying the owner of the parking lot and the owner's intent for using the lot, the State cannot meet its burden.

¶11      In contrast, the State argues that Schultz's "entire position is based on [a] legally incorrect theory": "Wisconsin's OWI law does not care who owns a particular property, it cares about the nature of that property and whether it is available for public use." According to the State, "[t]he elements of OWI are set by statute," and there is no requirement in the statutes that the State prove ownership of the parking lot. Instead, the State explains that, pursuant to WIS. STAT. § 346.61, it "only needed to show that the parking lot was 'held out to the public for use of their motor vehicles,'" which the State claims it proved. *See* § 346.61. The State further contends that the jury was properly instructed on that issue. Given that a jury's verdict is afforded great deference, the State asserts that Schultz's conviction should be affirmed. For the reasons that follow, we agree.

*I. Sufficiency of the Evidence*

¶12    "The question of whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law, subject to our de novo review." ***State v. Smith***, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.  Within our review, we "may not substitute [our] judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."  ***State v. Poellinger***, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).  "It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 506.

¶13    Accordingly, "when faced with a record of historical facts which supports more than one inference, an appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law." *Id.* at 506-07.  "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt," we may not overturn the verdict even where we believe that the trier of fact should not have found guilt based on the evidence. *Id.* at 507.  This standard applies in cases presenting either direct or circumstantial evidence at trial. *Id.*  "[A] finding of guilt may rest upon evidence that is entirely circumstantial," and "circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." *Id.* at 501.

¶14    We note first for the record, and as also recognized by the State, that Schultz appears to misstate the law by which we are reviewing the conviction in

this case. Schultz improperly states that "OWI offenses in Wisconsin are … limited to driving or operating incidents that occur on 'highways.'" *See* WIS. STAT. § 346.02(1). Schultz then notes that the "term, 'highway,' is … defined in WIS. STAT. § 340.01(22) to include generally all 'public' roadways" but that "private roads or driveways" are expressly excluded. Schultz explains that "private road or driveway" is defined, in pertinent part, as "every way or place in private ownership and used for vehicular travel only by the owner and those having express or implied permission from the owner." *See* § 340.01(46). He then cites this definition for "private roads or driveways" at multiple points in his briefing to argue that "it should be the prosecution's burden to prove, consistent with … § 340.01(46), that the premises did not constitute a 'place in private ownership and used for vehicular travel only by the owner and those having express or implied permission from the owner.'"

¶15 Other than citing the State's reference to WIS. STAT. § 346.61 in his appellate arguments, Schultz completely fails to address the statute. As noted above, that statute expressly provides that in addition to highways, WIS. STAT. § 346.63 is also "applicable upon all premises held out to the public for use of their motor vehicles." *See* § 346.61; *see also* WIS. STAT. § 346.02(1) (explaining that WIS. STAT. ch. 346 "applies exclusively upon highways *except as otherwise expressly provided in this chapter*" (emphasis added)); **Phillips**, 142 Wis. 2d at 554-55 (discussing the history of § 346.61). Under the facts of this case, we are not addressing a highway, a private road, or a driveway; we are addressing a parking lot. Accordingly, § 346.02(1) and WIS. STAT. § 340.01(22) and (46) are not applicable to the issue before this court, and the appropriate question is whether the parking lot at issue is a "premises held out to the public for use of their motor vehicles." *See* § 346.61.

¶16    On appeal, Schultz argues that "[t]he evidence had to be sufficient to prove that the [parking] lot was owned by the Bull Pen Bar" and "that the owner of the bar expressly or impliedly intended to give permission for the public to park on the lot." According to Schultz, "[n]either of those essential facts were proven." In support of his position, Schultz first notes that the complaint states that the parking lot was owned by the Bull Pen Bar. He then cites WIS. STAT. §§ 971.32 and 971.33[5] and contends that "the offense was alleged to having been committed 'in relation to property'"; therefore, "the complaint had to follow the procedural requirement in … § 971.32 that it allege who was the owner of the lot" and the State had the burden to prove the identity of the owner.

¶17    As the State correctly argues, however, WIS. STAT. §§ 971.32 and 971.33 are inapplicable because an OWI is not an offense that occurs "in relation to property." That phrase refers to situations where the crime itself was committed *against* or *affected* real property. It does not refer to situations where the location of the crime committed was *on* real property. Schultz fails to offer any statutory or case law support for the application of §§ 971.32 and 971.33 to OWI proceedings in Wisconsin, and we could find none in our independent

---

[5] WISCONSIN STAT. § 971.32 provides: "In an indictment, information or complaint for a crime committed in relation to property, it shall be sufficient to state the name of any one of several co-owners, or of any officer or manager of any corporation, limited liability company or association owning the same."

WISCONSIN STAT. § 971.33 provides:

> In the prosecution of a crime committed upon or in relation to or in any way affecting real property or any crime committed by stealing, damaging or fraudulently receiving or concealing personal property, it is sufficient if it is proved that at the time the crime was committed either the actual or constructive possession or the general or special property in any part of such property was in the person alleged to be the owner thereof.

investigation. Instead, it appears that Schultz's citations to §§ 971.32 and 971.33 may pertain to his incorrect application of WIS. STAT. § 340.01(46) to this case. Regardless, as we explain below, proof in an OWI investigation is not dependent on establishing the owner of the property.

¶18     Schultz next argues that *Phillips* and *City of La Crosse v. Richling*, 178 Wis. 2d 856, 505 N.W.2d 448 (Ct. App. 1993), support his position that the State was required to prove who owned the Bull Pen Bar. In *Phillips*, our supreme court considered whether an American Motors Corporation (AMC) parking lot was "held out to the public for use of their motor vehicles." AMC had posted signage stating: "AMC parking only. Violators will be towed at own expense." *Phillips*, 142 Wis. 2d at 553. The circuit court had also found that there was "no question that the parking lot was owned and maintained by American Motors for the benefit of their employees." *Id.*

¶19     Accordingly, our supreme court concluded that AMC's parking lot was not held out to the public for use of their motor vehicles under WIS. STAT. § 346.61 because the statute requires "proof that it was the intent of the owner to allow the premises to be used by the public."[6] *Phillips*, 142 Wis. 2d at 554. The court rejected any test focusing on physical accessibility—i.e., whether the location would physically accommodate vehicular traffic. *Id.* at 553-54. Instead, the court stated that the test focuses on the intent of the owner: "Is it the intent of the person or corporation in control of the premises that they be available to the public for the use of their motor vehicles?" *Id.* at 557.

---

[6] After *City of Kenosha v. Phillips*, 142 Wis. 2d 549, 419 N.W.2d 236 (1988), was decided, WIS. STAT. § 346.61 was amended to include "all premises provided by employers to employes for the use of their motor vehicles." 1995 Wis. Act 127, § 1.

¶20     We subsequently applied *Phillips*' holding in *Richling* under similar circumstances to the instant case.  In *Richling*, the defendant was arrested for OWI after his car hit another vehicle in a bar parking lot.  *Richling*, 178 Wis. 2d at 857.  The owner of the bar averred that he "restrict[ed] the use of his parking lot to his customers."  *Id.* at 859.  We explained, however, that it was "not necessary that a business establishment's customers form a representative cross[-]section of a city or town's population for them to be considered the 'public' within [WIS. STAT. § 346.61].  Nor is it necessary that some minimum percentage of the city's population patronize the business."  *Richling*, 178 Wis. 2d at 860.

¶21     Instead, we established a test to determine if a location is "held out to the public for use of their motor vehicles": "[W]hether, on any given day, potentially any resident of the community with a driver's license and access to a motor vehicle could use the parking lot in an authorized manner."  *Id.*  Given that "practically any motorist … could be a customer and park" in the bar's parking lot "on any day [the bar] is open," we concluded that the parking lot fell "under the category of 'premises held out to the public.'"  *Id.*  We further distinguished the holding in *Phillips* "where, on a daily basis, only those motorists who were employed by AMC, a 'defined, limited portion of the citizenry,' would be authorized to park there."  *Richling*, 178 Wis. 2d at 860-61.

¶22     We conclude that Schultz's reliance on *Phillips* and *Richling* in support of his position that the State was required to prove that the Bull Pen Bar owned the parking lot is misplaced.  Despite Schultz's argument to the contrary, neither *Phillips* nor *Richling* stands for the proposition that proof of ownership of the property is *required*.  To the extent that the *Phillips* court's statement that "there must be proof that it was the intent of the owner to allow the premises to be used by the public" could be read in the manner that Schultz now posits, we

10

disagree. *See Phillips*, 142 Wis. 2d at 554. First, our supreme court's discussion was in response to the city's argument in that case that the statute was "potentially applicable whenever there is a physical situation that would allow the passage of a motor vehicle." *Id.* at 553. Thus, the court was clarifying that it was not the physical situation that mattered but was instead the property owner's intent that was important.

¶23 Second, the *Phillips* court specifically stated that the State's burden to establish that "the premises, as a factual matter, [was] held out to the public for use of their motor vehicles" "can be satisfied in the same way that any burden of proof can be [satisfied,] by direct, demonstrative, testimonial, or circumstantial proof" and "can be by action or inaction that would make the intent explicit or implicit." *Id.* at 558. Thus, direct evidence regarding the property owner's intent, while certainly helpful in answering the question, is not *necessary* for the jury to find that the property was held out to the public for use of their motor vehicles.[7] According to *Phillips*, the State's burden can be established through circumstantial proof, as was done in the instant case. *See id.*; *see also Poellinger*, 153 Wis. 2d at

---

[7] The State also notes that Schultz "suggests that the mention of the parking lot's ownership in the criminal complaint and the State's attempt to call the owner of the Bull Pen [Bar] to testify about the ownership and leasing of the lot somehow established the ownership of the lot as an element of the offense of OWI." We agree with the State that there is no requirement in the statutes that the State must prove who owns the property at issue. *See* WIS. STAT. §§ 346.61, 346.63. In fact, § 346.61's only direct reference to property ownership states that the statute applies regardless of "whether such premises are publicly or privately owned." Thus, ownership of the parking lot is not an element of the offense of OWI. The mere fact that the State's complaint noted the location of the accident and assumed that the Bull Pen Bar's owner also owned the parking lot behind the bar, does not alter the elements necessary to prove an OWI offense. Further, while the State may have sought testimony from the bar's owner to more easily establish whether the property was held out to the public for use of their motor vehicles, as noted, that testimony was not *required*.

501-03, 507-08 (discussing circumstantial evidence in support of a criminal conviction).

¶24   At trial, the State presented testimony regarding the nature of the parking lot where the accident occurred. For example, the witness testified that parking was available for patrons of the Bull Pen Bar "directly in the back behind" the bar (in the lot where the accident occurred) and that the parking lot was "shared" with Royal Credit Union (RCU). The witness knew this information because, as he explained, he had previously been to the Bull Pen Bar numerous times before that evening. Officer Sanda testified, based on his years spent on routine patrol for the police department in the district where the Bull Pen Bar is located, that he had seen vehicles parked in the lot and traffic coming and going. According to Sanda, the parking lot "appeared to be open" to the public. Finally, Officer Mikunda also testified about the parking lot. He explained: "[M]y current shift I work 4:30 p.m. to 3:00 in the morning. During that time, that parking lot is commonly used for people … that go to the Bull Pen [Bar] because RCU is closed." Mikunda also confirmed that the parking lot was not gated and did not require key card access.

¶25   We conclude that the evidence presented at trial was sufficient for the jury to find that the parking lot where Schultz operated and parked his vehicle, and where the accident occurred, constituted premises held out to the public for use of their motor vehicles under WIS. STAT. § 346.61 and pursuant to the case law. *See State v. Carter*, 229 Wis. 2d 200, 208, 598 N.W.2d 619 (Ct. App. 1999) ("Whether a premises is held out for public use is a question of fact to be determined by the trier of fact."). The testimony provided by the officers and the witness was sufficient for the jury to reasonably find that the parking lot directly

behind the Bull Pen Bar was available to the bar's patrons and RCU customers and, therefore, was held out for public use. *See **Richling***, 178 Wis. 2d at 860.

¶26 Finally, Schultz argues that evidence introduced at trial showed that there was a sign in the parking lot that stated: "RCU parking only" and "violators will be ticketed and towed at owner's expense." According to Schultz, "[t]he State never countered or overcame the defense evidence that use of the lot was for private RCU patrons, not the public at large." We disagree with Schultz that this signage indicated the lot was "a private parking lot" under the test created in ***Richling***.

¶27 In ***Richling***, we assumed that the bar's owner "did in fact restrict the use of his parking lot to his customers," but we nevertheless concluded that "the lot was held out to the *public* for use of their motor vehicles rather than to a defined, limited portion of the citizenry." ***Id.*** at 859-60. Thus, Schultz's view of what our case law defines as "public" for the purpose of an OWI is entirely too narrow. Again, "the appropriate test is whether, on any given day, potentially any resident of the community with a driver's license and access to a motor vehicle could use the parking lot in an authorized manner." ***Id.*** at 860.

¶28 Here, any motorist could be a customer of RCU and park in that lot on any given day.[8] As we explained in **Richling**, "[i]f customers do not qualify as the public, it would be difficult to conceive of any parking lot in this state as being held out to the public under the statute." *Id.* at 861.

¶29 Therefore, based upon the circumstantial evidence presented at trial, the jury reasonably determined that Schultz had operated his vehicle in an area "held out to the public for use of their motor vehicles." *See* WIS. STAT. § 346.61. Even assuming the parking lot behind the Bull Pen Bar was privately owned and designated for the use of RCU customers, the parking lot would still be considered "held out to the public" because any motorist with a driver's license and a vehicle "could use the parking lot in an authorized manner" by parking in the lot and patronizing RCU. *See* **Richling**, 178 Wis. 2d at 860.

## II. Jury Instructions

¶30 Schultz next argues that "[t]he jury instructions did not adequately state that the 'highway' element of the offense required the prosecution to prove beyond a reasonable doubt that the owner of the parking lot was the Bull Pen Bar." Further, according to Schultz, the jury instructions committee that drafted WIS JI—CRIMINAL 2600 (2011) and WIS JI—CRIMINAL 2605 (2011) "gave no

---

[8] On the second day of trial, the State filed a motion to amend its witness list to include the owner of the Bull Pen Bar. The State sought to add the owner as a rebuttal witness in response to Schultz's defense "that the parking lot where the incident occurred is not open to the public" because "that was the first that [the State] had heard of this possible defense." According to the State's motion, Officer Mikunda spoke with the owner the day before (on the first day of the trial), and the motion alleged that the owner "advised he has owned the bar for at least 20 years and has leased two rows within the parking lot from the RCU bank. [The owner] advised [that] this agreement would have been in place" on the day of the accident. However, the State was not able to secure the owner to testify as to the lease of the parking lot at trial, so the jury did not hear this evidence.

consideration to situations, such as this, where the charging document specifically identifies the lot's owner." Schultz claims that a specific instruction becomes necessary where the owner of the lot is so identified and that owner's intent is placed in dispute. The absence of such a specific instruction, he argues, led to the real controversy in this case not being tried.

¶31 The circuit court has broad discretion when instructing the jury, and "we will not find error as long as the instructions adequately cover the applicable law." *State v. Robinson*, 145 Wis. 2d 273, 281, 426 N.W.2d 606 (Ct. App. 1988). Whether a particular jury instruction correctly states the law is a question that we review independently. *State v. Langlois*, 2018 WI 73, ¶34, 382 Wis. 2d 414, 913 N.W.2d 812. For the reasons that follow, we conclude that there was no jury instruction error.

¶32 First, we conclude that Schultz forfeited his right to appellate review of the jury instructions. At the close of evidence, the circuit court is required to conduct a conference with the parties to discuss, among other things, the proposed jury instructions. *See* WIS. STAT. § 805.13(3). Importantly, "[f]ailure to object at the conference constitutes a waiver of any error in the proposed instructions."[9] *Id.* Here, it is undisputed that Schultz did not object to the jury instruction language at the jury instruction conference; thus, he has forfeited his right to review of the jury instruction issue on appeal.

---

[9] While the statute refers to "waiver," the more accurate term is "forfeiture." *See State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (explaining the difference between "forfeiture" and "waiver"); *see also State v. McKellips*, 2016 WI 51, ¶47, 369 Wis. 2d 437, 881 N.W.2d 258 ("Failure to contemporaneously object to jury instructions results in forfeiting review of the jury instructions.").

¶33     Schultz argues, however, that we may reverse because the real controversy was not fully tried, as the jury instructions the circuit court presented gave the jury an incomplete statement of the law regarding "a main issue of controversy."[10]  *See* **State v. Perkins**, 2001 WI 46, ¶12, 243 Wis. 2d 141, 626 N.W.2d 762 ("Nevertheless, this court may reverse a conviction based on a jury instruction regardless of whether an objection was made, when the instruction obfuscates the real issue or arguably caused the real controversy not to be fully tried."); *see also* **Vollmer v. Luety**, 156 Wis. 2d 1, 22, 456 N.W.2d 797 (1990) ("In a case where an instruction obfuscates the real issue or arguably caused the real issue not to be tried, reversal would be available in the discretion of the court of appeals under [WIS. STAT. §] 752.35.").  According to Schultz, "the instruction modeled after WIS JI—CRIMINAL 2605 gave an incomplete statement of the law in light of the exception stated in WIS. STAT. § 340.01(46)," and, therefore, "[t]he jury was never advised of this exception to the definition of 'highway[]' and the owner's intent was never brought forth for the jury to determine."

¶34     To ascertain whether a jury instruction accurately states the law, we must "review the jury instructions as a whole to determine whether the overall meaning communicated by the instructions was a correct statement of the law." **Langlois**, 382 Wis. 2d 414, ¶38 (citation omitted).  Under the circumstances, we conclude that even if we choose to overlook Schultz's forfeiture, the jury

---

[10] The State explains that it "understands this argument to be an attempt to overcome the requirement that a defendant raise issues with the jury instructions at the instruction conference or they are forfeited," but it "does not understand Schultz to be raising a separate argument for discretionary reversal under WIS. STAT. § 752.35."  As the State notes, Schultz did not cite § 752.35 in his brief, although he did cite WIS. STAT. § 751.06, which is applicable to our supreme court.  We agree with the State that Schultz does not appear to advance a separate argument under § 752.35.

instructions provided in this case were sufficient because the overall meaning communicated by the instructions was a correct statement of the law.

¶35    Again, in addressing Schultz's specific contentions, we reiterate that the "'highway' element" was not at issue in this case.  The issue was whether Schultz operated a motor vehicle on a premises held out to the public for use of their motor vehicles while he was under the influence of an intoxicant.  *See* WIS. STAT. §§ 346.61, 346.63(1)(a).   Therefore, § 346.61 controls, not WIS. STAT. § 340.01.  Further, as stated previously, the charging document does not control or determine *the elements* of the offense that the State must prove at trial.  Our state statutes provide the elements of the offense.

¶36    The circuit court instructed the jury as follows:

> [WISCONSIN STAT. §] 346.63(1)(a) … is violated by one who drives or operates a motor vehicle on a premises held out to the public for use of their motor vehicles while under the influence of an intoxicant.
>
> Before you may find the defendant guilty of this offense, the state must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements were present.
>
> One, the defendant operated a motor vehicle on a premises held out to the public for use of their motor vehicle.
>
> ….
>
> Two, the defendant was under the influence of an intoxicant at the time the defendant operated a motor vehicle.

This language comes directly from WIS. STAT. § 346.61 and mirrors the language contained in WIS JI—CRIMINAL 2605 (2011).  "Although they are not infallible, we generally consider the pattern instructions 'persuasive' on the points of law

they state." ***M.P. v. Dane Cnty. Dep't of Hum. Servs.***, 170 Wis. 2d 313, 332 n.7, 488 N.W.2d 133 (Ct. App. 1992) (citation omitted).

¶37     We agree with the State that the instruction was a correct statement of the law at issue in the case, and Schultz has not persuaded us otherwise. *See **Langlois***, 382 Wis. 2d 414, ¶38.  We reject Schultz's argument that the jury instruction "gave an incomplete statement of the law in light of the exception stated in WIS. STAT. § 340.01(46)" because Schultz's application of WIS. STAT. §§ 340.01(22), (46) and 346.02(1) is inapposite under the circumstances.  The proper question was whether Schultz operated a motor vehicle on a premises held out to the public for use of their motor vehicles while under the influence of an intoxicant.  The jury was appropriately instructed on that question, and it found that Schultz did.  The real controversy was fully tried, and, accordingly, we will not exercise our discretionary reversal authority in this matter.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.